IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM L.,[1] | ) |
| | ) Civil Action No. 7:22-cv-00528 |
|     Plaintiff, | ) |
| v. | ) REPORT & RECOMMENDATION |
| | ) |
| MARTIN O'MALLEY,[2] | ) By: C. Kailani Memmer |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
|     Defendant. | ) |

Plaintiff William L. ("William") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. William alleges that Administrative Law Judge ("ALJ") Michael Dennard erred in his assessment of (1) William's mental impairments and (2) William's subjective allegations.

This case is before me on referral under 28 U.S.C. § 636(b)(1)(B), dated October 12, 2023. ECF No. 26. William requested oral argument be scheduled in this case. *See* ECF No. 17. However, having considered the administrative record, the parties' filings, and the applicable law, I find that oral argument would not aid the decisional process, and that the Commissioner's decision is supported by substantial evidence. Accordingly, and for the reasons detailed below, I respectfully recommend that the presiding District Judge **GRANT** the Commissioner's Motion

---

[1] Due to privacy concerns and because social security opinions often contain intensely personal medical information about claimants, I use only the first name and last initial of the claimant in such opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

for Summary Judgment, ECF No. 24; **DENY** William's Motion for Summary Judgment, ECF No. 16, 18; **AFFIRM** the Commissioner's final decision denying William's SSI claim; and **DISMISS** this case from the Court's active docket.

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that William failed to demonstrate that he was disabled under the Act.[3] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). While substantial evidence is a somewhat deferential standard, the Court does not "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work; instead, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## **CLAIM HISTORY**

William filed for SSI on February 29, 2020, alleging disability beginning December 2, 2008. R. 167. His claim was denied at both the initial level and on reconsideration on September 18, 2020, and January 22, 2021, respectively. R. 15. William appeared before the ALJ by telephone on November 3, 2021. R. 34–66. At that hearing, William amended his alleged date of disability to February 29, 2020. R. 41. Jarquil Edwards, William's mental health clinician,[4] testified as a witness in support of William's claim. R. 54–60. Donna Nealon testified as an impartial vocational expert. R. 61–65. The ALJ issued an "Unfavorable Decision" analyzing William's claim under the familiar five-step process[5] on November 16, 2021, and denied William's claim for benefits. R. 12–29.

---

[4] Edwards stated that "the service that I provide specifically is mental health skills building where we promote independency." R. 58. Edwards's exact qualifications are not known to this Court.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether she can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a *prima facie* case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's

At the first step, the ALJ found that William had not engaged in substantial gainful activity during the period since February 29, 2020, the amended alleged onset date. R. 18. At the second step, the ALJ found that William has the following severe impairments: lumbago, depressive disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), obsessive-compulsive disorder ("OCD"), and learning disability. R. 18.

As to the third step, the ALJ found that William's impairments, either individually or in combination, did not meet or equal a listed impairment. *Id.* The ALJ specifically considered Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (abnormality of a major joint(s) in any extremity), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). R. 18–19. The ALJ found that William has moderate limitations regarding understanding, remembering, or applying information. R. 19. He has moderate limitations in interacting with others. *Id.* He has moderate limitations regarding concentrating, persisting, or maintaining pace. R. 20. He has moderate limitations for adapting or managing oneself. *Id.*

The ALJ concluded that William has the RFC to:

Perform medium work as defined in 20 CFR 416.967(c), except he can understand, remember, and carry out simple, routine tasks, with simple, short instructions, and simple work-related decisions, for 2 hour segments throughout an 8-hour day for a 40-hour workweek. [William] can occasionally interact with supervisors, coworkers, and the public. [He] can tolerate a work environment with only occasional workplace changes. [He] cannot be expected to perform tasks in which others rely on [his] timely performance of his work. In addition to normal breaks, [he] would be off task 10% of the time of an 8-hour workday, and would be absent from work 1 day per month.

R. 21.

---

age, education, work experience, and impairments, to perform available alternative work in the national economy. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

At the fourth step, the ALJ concluded that William has no past relevant work. R. 28. At the fifth step, the ALJ identified jobs in significant numbers in the national economy that William could perform, including positions as a laundry laborer, hand packer, and hospital cleaner. R. 29. Thus, the ALJ determined that William was not disabled. *Id.* The ALJ's decision became the Commissioner's final decision when the Appeals Council denied William's request for review on July 26, 2022. R. 1–3. This appeal followed.

## ANALYSIS

William argues that there is not substantial evidence to support the ALJ's assessment of (1) William's mental impairments and (2) William's subjective allegations. ECF No. 17 at 17, 23.

### A. Medical History Overview

William was born on December 2, 1992. R. 167. He has a high school education with a modified standard diploma.[6] R. 43.

On December 7, 2017, William presented to the care of Conrad Daum, M.D., at Piedmont Community Services ("Piedmont") for psychiatric evaluation. R. 260–64. At that time, William's mood on examination indicated depression; however, William's speech was spontaneous, and his attention and concentration, along with his orientation to time, place, and person, was "ok." R. 261–62. William's diagnoses at that time included ADHD, combined type; bipolar II disorder; generalized anxiety disorder; obsessive-compulsive disorder; social phobia, generalized; and unspecified intellectual disabilities. R. 262. As a result of these diagnoses, Dr. Daum prescribed

---

[6] At the November 2021 administrative hearing, William explained that a "modified standard diploma," meant that the standards to graduate were altered to allow him to obtain his high school diploma. R. 44. He further explained that his high school grades were consistently failing throughout his four years there, but that in his fourth year of high school, he was moved from ninth grade to twelfth and graduated. *Id.*

5

William with 10 mg Compazine tablets; 50 mg trazodone tablets; and 40 mg Paxil tablets. R. 263.

William continued to return to Piedmont throughout 2018, 2019, and 2020. *See* R. 260–391, 496–594, 676–815, 977–1055. Dr. Daum examined William several times. R. 284, 308, 333–36, 339–42, 356–59, 388–90, 541–44, 568–81, 582–85, 760–63. William's treatment at Piedmont was conservative and included mental health therapy, medication, and social services. R. 765–66, 779–81, 883–85, 891, 990–91, 1023–24, 1046. On several occasions, William admitted suicidal ideation, which he stated occured about "once a month." R. 587, 589, 760, 779, 812, 991, 995, 1044. The record shows instances where William ran out of his mental health medications and was too anxious to request refills, which only increased the severity of his symptoms. R. 883, 884, 991. Additionally, the record reflects instances where William neglected to take his medications or stopped taking them because he thought they were not helping. R. 942, 980, 1001. Lastly, William's appearance fluctuated between appropriate and slovenly or inappropriate. *Compare* R. 761, 897, 899, 1004 *with* 993, 1028, 1043, 1047. William was discharged from mental health counseling services at Piedmont on July 28, 2020, because he preferred face-to-face sessions over the telehealth sessions offered at that time because of the COVID-19 pandemic. R. 812.

On June 16, 2019, William presented to the emergency department at Franklin Memorial Hospital with complaints of right flank pain and dysuria. R. 410. Records indicate William has a history of kidney stones. *Id.* William's right flank pain improved with a Toradol injection, and he was discharged in stable condition. R. 412–14.

The record shows that William received services at Support Systems, Inc., ("Support") beginning in August 2019 and continuing through at least August 2021. R 939–76.  Quarterly

6

reviews indicate that during that period, William fluctuated between making "minimal" progress, "some" progress, "significant" progress, and completion of the goals and objectives identified in his individualized service plan. *Id.*

A Support Quarterly review from May 2021 notes that "[William] is able to engage with others," but that "[h]is difficulties are exacerbated by his depression and anxiety—he will be very avoidant and isolative." R. 946. Another Support quarterly review dated August 2021 indicates that William struggled with nutrition, medication, and appointment compliance. R. 939–40. He was continuing to struggle with strong body odor and to understand the importance of bathing. R. 40. While the August 2021 review notes that William continued to struggle with socialization and communication, it also noted that William socialized with the same group of friends who would come to his house. R. 940.

On August 9, 2019, William presented to the emergency department at Franklin Memorial Hospital with complaints of back pain, spasms, and blood in his urine that developed after helping a friend move a sofa. R. 407. Urinalysis revealed an increased white blood cell count that the record notes "is not normal for a man." *Id.* William was treated for a urinary tract infection as well as muscular back strain with Keflex, Flexeril, Voltaren, and Umic. *Id.* The final impression was back strain, initial encounter, and acute cystitis without hematuria. *Id.*

On September 5, 2019, William presented to the emergency department at Franklin Memorial Hospital with complaints of lower back pain and headaches associated with memory loss and blurred vision. R. 405. William stated that he was experiencing problems with his short- and long-term memory that were increasing in severity. *Id.* His physical examination was unremarkable. R. 406. An x-ray of William's spine was negative for acute findings. R. 416. William's providers referred him to physical therapy to help control his back pain. *Id.*

On September 25, 2019, William returned to Franklin Memorial Hospital for a physical therapy evaluation. R. 401–04. William reported a four-year history of pain in both the low and upper back which increased with housework and heavy lifting. R. 402. Records indicate that he previously underwent a physical therapy evaluation in April 2016 for the same complaints. *Id.* William's plan of care scheduled him to be seen twice weekly for six weeks. R. 404.

On October 9, 2019, William was discharged from physical therapy. R. 397. He reported that his low back pain had gone away "for now," and that the pain that he came to physical therapy to address had resolved R. 397–98. He was advised to continue with home exercises. R. 398.

In September 2020, Daniel Walter, Psy.D., reviewed the medical evidence and opined that William could understand, remember, and carry out "very short and simple instructions," maintain attention and concentration for extended periods to complete short and simple work, and interact with the general public. R. 94. In January 2021, Richard Milan, Jr., Ph.D., reviewed the medical evidence and came to the same conclusions as Dr. Walter. R. 103–04.

**B. November 2021 Administrative Hearing**

At the November 2021 administrative hearing, William testified that he was previously diagnosed with a learning disability that affected his ability to focus well in large, crowded classrooms. R. 44. He further testified that while he took some additional classes after graduating high school, he dropped out of that program because he was unable to focus without medication prescribed for ADHD. R. 45.

In interacting with others, William testified that he receives treatment through Piedmont for anxiety disorder and social phobia. R. 46. While he occasionally attended a weekly card game and game night, he testified that he often did not attend because he did not want to leave

his home. R. 48. Regarding his home, William testified that he had difficulty keeping it clean because he was constantly distracted. R. 52.

Jarquil Edwards, a mental health clinician at Support, testified at the hearing. R. 52–54. Edwards had continually seen William as a client for three to six hours each week since the end of 2018. R. 54. Edwards testified that William's biggest problem is social isolation caused by William's depression and anxiety. R. 55. Edwards further testified that William would sometimes go as long as four days without leaving his bed, as well as week-long periods during which William would refuse to leave his home as a result of his anxiety and depression. R. 60.

### C. The Commissioner's Decision is Supported by Substantial Evidence

William argues that there is not substantial evidence to support the ALJ's assessment of (1) William's mental impairments and (2) William's subjective allegations. ECF No. 17 at 17, 23.

First, William argues that there is not substantial evidence to support the ALJ's assessment of William's mental impairments. William summarizes the evidence and asserts that the ALJ's decision is not supported by substantial evidence. ECF No. 17 at 19–20. He is reminded that review for substantial evidence requires more than merely identifying medical records that are inconsistent with the ALJ's findings. Instead, William must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or that the overwhelming weight of inconsistent evidence overcomes the substantial evidence standard. This Court is not permitted "to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176. The Fourth Circuit is clear that an ALJ's findings "as to any fact, if

9

supported by substantial evidence, shall be conclusive." *See Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).

To the extent that William argues that the ALJ failed to provide a detailed explanation for his RFC's findings, I do not agree. The ALJ engages in a robust narrative discussion of the medical evidence and how it connects to Williams' RFC. R. 22–28. He specifically considered the medical evidence and explained that it demonstrated limitations covered by William's RFC. R. 26. Regarding the limitation that William "is capable of no more than simple instructions/tasks," the ALJ explained that, "[h]igher-level instructions/tasks are inherently stressful . . . such that they would exacerbate the claimant's mental health symptoms." *Id.* This example is but one of many where the ALJ built "an accurate and logical bridge from the evidence to his conclusion." *See* 26–27. I find there is substantial evidence in the record to support the ALJ's evaluation in that regard.

William also asserts that the ALJ failed to perform a function-by-function analysis or a narrative discussion regarding his conclusion that his RFC findings account for William's moderate limitations in concentration, persistence, pace, or moderate limitations in interacting with others. ECF No. 17 at 20–21.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. *See* SSR 96-8p; *see also Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings).

10

In *Mascio v. Colvin*, the Fourth Circuit rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," and instead instructed that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d 632, 636 (4th Cir. 2015) (citation omitted).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. Unlike the ALJ in *Mascio*, the ALJ here did not fail to consider conflicting medical evidence. *See* R. 24, 27–28. Further, this Court is "not left to guess about how the ALJ arrived at his conclusions," because the ALJ engaged in a robust, in-depth narrative analysis of Williams' medical records, the medical opinions, and William's hearing testimony. R. 23–28. Thus, the ALJ built "an accurate and logical bridge from the evidence to his conclusion," and there is substantial evidence to support the ALJ's conclusion.

William also argues that there is not substantial evidence to support the ALJ's assessment of William's subjective allegations. ECF No. 17 at 23–27.

An ALJ must assess a claimant's subjective complaints about the extent of his functional limitations considering the objective medical evidence and other factors, including his treatment history, medications, work history, and daily activities. 20 C.F.R. §§ 404.1529(c), 416.929(c). He must engage in a two-step process in which he first determines whether there is an underlying medically determinable mental or physical impairment that could reasonably be expected to produce the claimant's pain or other symptoms, then the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which

11

they limit the claimant's work-related activities. 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). An ALJ's assessment of the credibility of a claimant's subjective complaints is afforded a high level of deference on review, as the Fourth Circuit has proclaimed such assessments are "virtually unreviewable" on appeal. *Darvishian v. Geren*, 404 F. App'x 822, 831 (4th Cir. 2010).

Here, the ALJ reviewed William's medical history and his subjective allegations in detail and found that William's statements regarding the severity of his limitations were not entirely credible because they were not supported by the objective medical evidence, his treatment history, his daily activities, and other evidence. R. 22–23. The ALJ was entitled to find that the evidence outweighed William's subjective statements, and he provided a coherent and logical explanation for doing so. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984). Where, as in this case, the ALJ's opinion is thorough and applies the proper legal standard, this Court cannot reweigh the evidence. Thus, I find that the ALJ supported his analysis of William's subjective allegations with substantial evidence in the record.

## **CONCLUSION**

For the foregoing reasons, I find there is substantial evidence to support the Commissioner's decision. Therefore, I respectfully recommend that the presiding District Judge **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 24; **DENY** William's Motion for Summary Judgment, ECF No. 16, 18; **AFFIRM** the Commissioner's final decision denying William's SSI claim; and **DISMISS** this case from the Court's active docket.

**NOTICE TO PARTIES**

The clerk is directed to transmit the record in this case to Robert S. Ballou, United States District Judge, and to provide certified copies of this Report and Recommendation to counsel of record.

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party must serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 20, 2024

*C. Kailani Memmer*
C. Kailani Memmer
United States Magistrate Judge